We will move along at this point to case number 3 on our docket, which is Richard Anderson v. Weinert Enterprises, Inc., 20-1030. We'll get counsel for these cases lined up. And we have Mr. Ho and Ms. Walter. So, Mr. Ho, you may begin. We have another sound problem. Hang on. Are you muted? Oh, you have to unmute. Thank you, Your Honor. May it please the Court. The District Court made two errors on this finding of numerosity. The first finding is... Can I just quickly ask you a clarifying question, Mr. Ho? Sure. I assume that the collective action under the Fair Labor Standards Act is gone in this case, and that we are talking about your effort to get a certified class on the state law claim. Is that correct? Yes. We're solely talking about Rule 23 class certification. Okay. Just wanted to get that nailed down. And, Mr. Ho, let me piggyback a little bit on Judge Wood's question. Could you speak to the mootness issue here? If the FLSA collective action is out, and we're just talking about the Rule 23 class action, is there any financial interest that your client, Mr. Anderson, still has in this case, after his acceptance of the Rule 68 offer of judgment? Yes, Your Honor. If the denial of certification was reversed, and there was a class recovery, then Mr. Anderson can recover a class representative incentive award for the success of the class. And that's the financial stake that he has. That's been my case decided by the Seventh Circuit from 2013. And so the incentive award, is that provided for, and I'm not asking for any details, of course, here, is that provided for in the attorney-client agreement that would exist between, for example, yourself and Mr. Anderson? Or is that, I'm trying to put some meat on those bones. Sure. I think as part of the practice in the district courts, that if you prevail on a class, you can petition a district court for a class incentive award. Well, the judge would have to, I mean, of course, if it were to wind up being a Rule 23 certified class, the court would need to approve any settlement. And so at that point, the court would see whether there was an incentive award for the named member or members of the class, right? Right. And Mr. Anderson standing the petition for that award gives him standing to pursue this appeal. He could recover something if this appeal was successful. You may continue. Thank you. So the first issue is that even if we exclude the 2019 new hires, a class of 37 in this case is sufficiently numerous. So can I jump in right away? I'm not sure that you can understand why you're making this argument, but I'm not sure that we can disregard the people who have been hired since the time this class or this litigation began. Because isn't our review for abuse of discretion on this class certification question, and isn't it the case that 37 is right at the margins? You know, some judges might see in a particular case the right numerosity there, but other judges might doubt that it's there. But in what way did District Judge Griesbach abuse his discretion when he thought, well, for this class, 37 is just still, it's just too short? What Judge Griesbach held was that it matters how many class members joined or is not practical. So because there are only two class members who cannot be joined, that's not sufficient to make the class sufficiently numerous. We believe that violates the plain language of 23A1, which says the joinder of all members must be impractical. Well, I mean, I was dubious about that, to be honest. You know, I don't know that you have to, you know, go find somebody from Hawaii to be part of every class so that you have impracticable joinder. But in a broader sense, didn't Judge Griesbach also note that under the law that you're trying to proceed under, there's a possibility of getting an attorney's fee award and some of these other purposes of class actions might be served in a different way? I think that's a slightly different analysis, though, because we're talking about two class members, one who resides in North Carolina who worked for Weiner for three and a half months, one who resides in central Illinois who worked for Weiner. No, I understand that. I was trying to get away from that. Just say, suppose it's 37 people who all are in the upper Midwest region. Suppose they're in Wisconsin, maybe a few people in Illinois, or maybe somebody's in Minnesota, whatever. So you could actually bring them all in. And the Phillips Petroleum against Schutz case suggests that for plaintiff class members, that's okay since they have the ability to opt out if they wish to do so if it's a 23B3 class. But it doesn't seem inconceivable to me to have 37 plaintiffs under Rule 20. Except for two of them, it will cost more for them to travel to Green Bay to testify. Why is that so? I mean, that's assuming they need to travel. Why do they need to travel? Why can't you just make a phone call to them and say, here's the nature of the lawsuit that we're contemplating. Would you be interested in joining? They're either going to answer that yes or no. And then from there, you see how the chips fall with respect to whether somebody, I don't know, wants to serve an interrogatory on them or take their deposition or whatever. Which they normally can't do for the unnamed members of the class. Right. Well, what if my nurse says, you know what, we don't think our records are accurate. We're going to require each employee to testify to what they actually did during the time period they worked for us to prove damages. And those people who have to travel to Green Bay to authenticate those records. No, they don't. It's quite possible to take a deposition outside the district in which litigation is pending. It happens every day. It seems, Mr. Ho, unless I've misread your argument, that what you're arguing is that, hey, look, there is at least a prospect here that two of the 37 can't be joined because of where they reside now or something. What I'm wondering about is, but when you make that statement in your brief, you don't accompany it with citations to authority. It would suggest if we can identify one or more where it's conceivable that there's some difficulty, that that defeats joinder for the whole group. What authority supports that proposition? I think that's the plain language of the rule. The rule says the joinder of all members must be impractical in order to satisfy numerosity. That's right. Wouldn't you have expected some case at some point along the way to say all means all? And so if it's not 100 percent chiseled in stone, that means joinder is impracticable. I think it's unusual for a council to attempt to join a class of 40 or around 40. That's why that issue has never been formally decided in opinion. But the other reason, I mean, think of the implications of what you're saying. There are many cases in which plaintiffs from State A are pursuing litigation against a defendant who's in State B. And that's because maybe State B is the only place where you can get personal jurisdiction over the defendant. So, you know, you get local council and you, in today's world, it's actually not even a big deal. But this has been going on for more than a century. So I'm puzzled that because somebody happens to live out of state, you think they can't be joined as a plaintiff. I think in a way, in our case, especially to prove damages, the defendant can make that person testify or at least testify in a deposition. And if the amount at stake is small, it may not be worth it for that person to do so. Given the time, let me move to the second argument, which is that the district court erred by not including the 2019 new hires in the proposed class. By the time the court decided on certification, the minor employees who are already employed are unknown class members or in the future class members. Under the president of this circuit, unknown class members can be joined in the class so long as their identity is ascertainable. In this case, it's easily ascertainable by looking at Weiner's records who these folks are. Well, that's right, because aren't you really arguing that they're not future class members at all? They are identifiable individuals whose names would show up on the records of the company, Weiner Enterprises. Correct, Your Honor. And where we believe the district court erred is that the district court said it would be speculation to find Weiner did not change his policies in response to the lawsuit that was filed. And we think that's plainly inconsistent with the record that was made before the district court. So four months after the lawsuit was filed and served, the deposition of Weiner was taken. At that deposition, Weiner's owner adamantly defended and explained this policy that paid travel at time and half the minimum wage and would not pay job site overtime pay until the employee worked 40 hours on the job site. So is it your argument that you didn't have to sit there once a week sending them a letter saying, and are you still following this policy, that it's a permissible inference that since they defended it at the deposition, that it's continuing policy? That is correct, Your Honor. In particular, given that when the plaintiffs did move for class certification, we argued the 2019 new hires should be included in the class. In response to that, Weiner pointed out to the court that we no longer work on prevailing wage projects. So the 2018 new hires had no prevailing wage work experience. So Weiner understood the need to explain to the court changes that affect the composition of the class. Did you ask Weiner how many new people it hired? Or did you see that as part of the duty to supplement an answer to an interrogatory, which of course is a duty under the rules? Right. So Appendix Page 13 was something that Weiner produced during this hearing. We believe Weiner had a duty to supplement that list. So Weiner understood the need to explain to the court relevant changes that affects class composition and never told the court it made any changes to the relevant overtime policies. We think determining no changes were made requires a straightforward application of the preponderance of the evidence standard, not speculation that's a district court found. And given Weiner's hiring history, it's clearly permissible for the district court to find that Weiner did hire a sufficient number of employees in 2019 so that the total class exceeds 40. Therefore, we think the court should instruct the district court that the 2019 new hires must be included and remand the matter to the district court to determine whether the class is sufficiently numerous, whether the other requirements for class certification have been satisfied. I reserve the rest of my time for rebuttal. All right, thank you. Ms. Walther. May it please the court, Jennifer Walther on behalf of Weiner Enterprises, Inc. The district court properly exercised its discretion in denying class certification. There's been no showing that the court had an erroneous view of the law or an erroneous assessment of the evidence. In fact, the court properly followed the teachings of this circuit in cases such as Marcial by declining to engage in speculation about the numbers in the class. But can I ask you, Ms. Walther, the thing, one thing that bothers me about the district court's treatment of this is its assumption that these people, the 2019 people who had been hired were sort of speculative future people. They weren't. Nobody knows how many people Weiner is going to have working for it in 2023. I take that point. So it's not like an injunction case. But there was a concrete knowable number of people. Maybe it would have made a difference in the district court's thinking on numerosity. Maybe it wouldn't have. I really couldn't say. If it had been 41 people instead of 37, maybe the judge would have seen it the same way. But I think his understanding of the status of these new hires is problematic. Well, Your Honor, whether they were future hires and certainly at the time that plaintiff made the motion to certify they were future hires, but whether they were future hires or just an unidentified current potential members, the court still did not have any evidence in front of it. At the time it made the decision to determine whether the putative class members would satisfy the numerosity requirement. Why not? Why didn't it have? I mean, why wasn't it easily possible for Weiner to produce as of the date of notice to the class, which would, of course, be required under 23B3 to get the names and addresses? It would then be plaintiff's burden to provide that notice and see what the numbers look like. The judge is always free to reconsider a tentative thought on class certification. Because the court was within his discretion to look at the evidence that was in front of him at the time, and there's no rule or case in this circuit that says that the court has to rely on prior hires to predict new hires. So even at the time of class certification, or even at the time that the court rendered its decision, it did not know whether in the first instance the plaintiff had satisfied his burden of proof as to whether the number of employees were sufficient. And in addition, the court was very concerned about speculating even whether those employees would have been subject to the same policy, whether there had been changes to the policy. But isn't that Weiner's? I mean, we don't want to spill too far into the merits. And one has the sense that Weiner was stonewalling a bit about whether it had changed its policies or not. I would have thought defending the policy so vigorously is a good sign that you still have it. And of course, even a voluntary change in policy that can be undone might be enough to support a case. So I'm concerned about that and Weiner's forthrightness in answering interrogatories. And I'm also concerned about Weiner's argument that we can't, at least for present purposes, subject to reconsideration, assume that this is still Weiner's policy. Weiner holds all the cards here. Weiner could say, oh, no, we threw that policy out. Here's a completely brand-new policy, and this whole case is moot. Well, then, in effect, Judge, you're shifting the burden of proof to defendant to prove the negative when Rule 23 is quite clear that the plaintiff carries the burden of proof on each and every element of the case. And the only time when … But there's discovery. That doesn't mean that the defendant can disregard relevant discovery requests. That's what worries me about this situation. I understand, Judge, and that would worry me, too, if there was any evidence on the record that that was true. But there's no evidence on the record that that's true. We did comply with our discovery request. And notably, the plaintiff did not raise any issue before the district court on any kind of discovery dispute, did not ask for more time to obtain more discovery. Further, we know that at least one of the named plaintiff in the case, Evan Chalkin, was employed through March 2019, and there's no reason why he would have been unable to either know or obtain that information. So there's no reason to shift the burden of proof to defendant to prove that issue when that issue was not within the exclusive possession of the defendant. Ms. Walter, it's Judge Scudder. When I read Richard Anderson's declaration, and I read it in connection with the deposition testimony that Judge Wood is referring to, it seems to me that whether there is sufficient consistency of policy that this is really a non-issue. I don't see how Mr. Anderson may have failed on another front, but I don't see how he's failed on the policy front here at all. I mean, he's explained how he does his timekeeping. The company was not saying, what are you talking about? We changed that policy two years ago in the deposition. And so I think, I mean, for me, I'm past that one, at least in my own mind. The question that I have is about the, on the numerosity point, the 37. Was there anything that prevented Mr. Anderson in that declaration from offering more detail about the roofing business's seasonal employment? And saying, you know, I've been here a bit. Here's what we tend, here's what the company tends to do in the season. And so if it follows suit for this upcoming summer, I expect that we're going to have a total of 54 employees. There was nothing preventing Mr. Anderson from doing that. He, what the record shows through Mr. Weinert's declaration, that Mr. Anderson was not employed after 2018. So he would not have had firsthand knowledge of what happened in 2019. However, Mr. Chalkin was a named plaintiff in the lawsuit and was employed through March of 2019. So certainly he would have been qualified to provide that information if in fact he had it. So in addition, the plaintiff has talked about whether we could identify the individual employees through the defendant's records. But the court has determined that issue as to whether the deputative class members are ascertainable is not an issue that's to be used to decide numerosity. So that simply shouldn't be an issue here. Why isn't there at least some evidence of numerosity? I mean, if you asked and you found out, obviously quite contrary to the facts, that Weinert is a company that typically has 150 people working for it, you know, that would be very strong evidence that numerosity was satisfied. If it was a little tiny mom and pop that had 10 people working for it, that would equally be strong evidence on the other side. Yes, and typically when the cases discuss the ascertainability issue, they discuss it as a separate factor from numerosity. And in the cases where they find that the deputative class members are ascertainable, they can already determine that the class would be sufficiently numerous, where we don't have that issue in this case because we only have evidence of 37 employees. But, you know, if we disregard the new hires and the likelihood of new hires, and I guess I'm a little worried about siloing the evidence quite that much. Oh, you know, this is ascertainability, this is numerosity, this is something else. Evidence is evidence. And as you discover who's out there, i.e., you ascertain, you're learning something about numbers, too. And it was within the district court's discretion to look at those numbers and to look at the evidence that existed, and the district court was following this court's rules by deciding it didn't want to speculate, not only about the numbers, but whether the policy would even have applied to these employees or whether they would have suffered the same type of harm. So we know, for example, that Mr. Chalkin, although the plaintiff had pointed out he had paid travel time on his 2019 payroll records, Mr. Weinert attested in his declaration that he had looked at Mr. Chalkin's time records all the way through after he was no longer employed, and the only time Mr. Chalkin was affected by the policy where he had paid travel time and then subsequently worked overtime, which is the issue in this case, was in May of 2018. So we don't have any evidence about whether any employee either did or would have been affected by the policy sufficient to allow them to become members of the class. Isn't that a merits question? No, it goes to the question of whether they could be included in the class because only those individuals who could be harmed can be included in the class. Well, and that means employees who, I mean, so you've said actually that Mr. Chalkin is one person. It's not a great amount of money, but that's, of course, a reason for class treatment, not a reason against it, if it was the one occasion. But the allegations are that this was a pattern that many of these employees experienced. A pattern that's only been shown to have existed through 2018 and which the court did not find thereafter within its discretion was sufficiently probative to prove the truth of the fact as to what happened in 2019. So are you here telling us that Weiner Enterprises no longer has the overtime pay policy that is described in this complaint? As we sit here today, that's correct. Where is the evidence in the record of that? It's not in the record. It's quite troublesome. Ms. Walter, what should we make, if anything, in your view of the district court's statement that participation in the class action was likely to be low in light of the fact that there were only three opt-ins in that FSLA case? I don't know what difference any of that makes. Well, the courts in this court found that Joinder was not impracticable and the courts look at a number of factors to determine whether Joinder is impracticable. One of the factors that courts look at is the size of the class. And the court noted correctly that the size is relatively small at 37 members and then said, and it appears that interest in the case would be even weaker based on the fact that only three individuals opted into the FLSA collective action. And so, again, he's looking at whether Joinder is impracticable. But they, under Rule 23, it's an opt-out scheme, right? I don't know, like they're trying to handicap their degree of interest or their likely degree of participation. Isn't that neither here nor there? I mean, I guess if they were so disinterested, they could opt out. Well, this court in Espenshide has noted that those two standards really are collapsed, and so they're No, I'm not sure that they're collapsed. Indeed, we've said that you can go forward with, you know, Count 1, FLSA, and Count 2, Rule 23 count. So we have recognized that these are different standards and, frankly, different dynamics. Correct. But the Espenshide case has talked about there really isn't a meaningful distinction when looking at the certification standard. I think you're vastly over-reading Espenshide. Okay. I apologize. I'm looking at the Espenshide language right in front of me, and it says there's the case law has merged the standards. But in any event, the Which page are you looking at? I apologize. I don't have that in front of me. I just have the quote. In any event, there are other cases that emphasize, and actually lots of literature, if you look at the ALI's aggregate litigation project, the opt-in format, which is, you know, one that actually many people think would be a good one to have for aggregate litigation. It causes people to have to step forward, gives them more responsibilities as essentially named parties in a case, whereas the opt-out format allows people to retain their anonymity somewhat more. They're not bothered with the burdens of litigation other than the named plaintiff. There are practical differences. And certainly there are reasons and theories as to why employees may not opt in to the FLSA class, but there was no evidence that any of that happened here. And again, it was within the court's discretion to consider those factors. And the court here looked at that as only one factor amongst many. I don't think the court found it was determinative. And certainly, you know, if that weren't considered, I don't think the court's decision falls because he still found that it was impracticable based on the 37 employees, not based on the three. And in addition, the court considered the fact that this is not the type of case where geographic diversity renders joinder impracticable. Almost all the members were concentrated within a 50-mile radius, all within the court's jurisdiction. And the cases that find impracticability involve large numbers of class members who were widely scattered all across numerous states. Although the plaintiff has raised a concern about a couple of individuals being out of state, the law doesn't require them to be in state. The statute specifically refers to joinder being impracticable, which by definition means incapable of being joined. And the fact that one or two may be out of state doesn't mean that they're incapable of being joined. And in fact, the court can easily manage any issues that might arise as a result of that. And finally, the court considered that the amount of damages did not render joinder impracticable because the prevailing parties can obtain attorney's fees of cause, and because there was no evidence that the claims were so minimal. All right. Thank you. Thank you very much, Ms. Walther. Anything further, Mr. Ho? Yes, Your Honor. I want to raise two arguments, two points here. One is that under the Bell v. PNC bank case, if somebody receives travel pay, that person's a class member, whether or not he or she ever worked overtime. It's 800 Fed Third at 380. But the second point I want to make is that the district court here never considered how many new hires there were in 2019, because they probably found there may have been a change in the travel pay policy, overtime policy, which we showed by the preponderance of the evidence never happened. And Mr. Anderson did not need to explain in a declaration how many new hires there were in 2019, because Weiner's scenario list tells that story. Look at appendixes pages 13 and 14. What Weiner did was had a permanent workforce of five or six employees. Between 2015 and 2018, it will supplement that permanent workforce by hiring 10 to 12 people per year. Given that evidence, it certainly would be within the range of the district court's discretion. Once it's been instructed by this court that 2019 new hires must be included, that Weiner would have hired 8 to 12 new employees in 2019, making it a class of between 45 and 50 members, which would be far more easily satisfied the numerosity requirement than 37, with the line recognized by this court for where the two-under is preferable is 40. Therefore, at a minimum, this court should instruct the district court that 2019 new hires should be included in the class, and a remand to the district court for refinding on numerosity. Thank you. All right. Thank you very much. Thank you, Ms. Walther. We will take the case under advisement.